## ESTADO LIBRE ASOCIADO DE PUERTO RICO
## TRIBUNAL DE APELACIONES
## PANEL IX

| | | |
|---|---|---|
| MÁXIMO HERRERA<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN, PHYSICIAN CORRECTIONAL<br><br>Recurrida | KLRA202400335 | REVISIÓN ADMINISTRATIVA Procedente del Departamento de Corrección y Rehabilitación<br><br>Caso núm.: B-233-24<br><br>Sobre:<br>COLCHÓN ORTOPEDICO Y SILLA ORTOPEDICA |

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Alvarez Esnard y la Jueza Díaz Rivera.

Díaz Rivera, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 1 de octubre de 2024.

Evaluado el recurso ante nuestra consideración, por estar el Panel igualmente dividido, se dicta Sentencia mediante la cual se confirma el dictamen emitido por la agencia recurrida.

La Jueza Díaz Rivera emite voto particular, al cual se une el Juez Candelaria Rosa. La Jueza Brignoni Mártir emite voto disidente y la Jueza Álvarez Esnard disiente sin opinión escrita.

Lo acordó y manta el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

Número identificador
SEN2024_____

| | | |
|---|---|---|
| MÁXIMO HERRERA<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN, PHYSICIAN CORRECTIONAL<br><br>Recurrida | KLRA202400335 | REVISIÓN ADMINISTRATIVA Procedente del Departamento de Corrección y Rehabilitación<br><br>Caso núm.: B-233-24<br><br>Sobre: COLCHÓN ORTOPÉDICO Y SILLA ORTOPÉDICA |

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Álvarez Esnard y la Jueza Díaz Rivera.

## VOTO PARTICULAR DE LA JUEZ DÍAZ RIVERA AL QUE SE UNE EL JUEZ CANDELARIA ROSA

En San Juan, Puerto Rico, a / de octubre de 2024.

Comparece ante *nos,* Máximo Herrera (Herrera), quien se encuentra confinado en la Institución Bayamón 501 Sección 3J y recurre por derecho propio en forma *pauperis.* En su recurso, el señor Herrera nos solicita que revisemos la *Resolución* emitida el 1 de mayo de 2024, por la División de Remedios Administrativos (DRA) del Departamento de Corrección y Rehabilitación (DCR o recurrida). Dicha *Resolución* fue notificada al señor Herrera el 21 de mayo de 2024. Mediante dicho dictamen, la DRA confirmó y modificó la respuesta emitida por el Dr. Marcos Devarie, Director Médico del Complejo Correccional de Bayamón.

Por los fundamentos que expondremos a continuación, confirmaría el dictamen recurrido.

### I.

Surge del expediente ante *nos* que, el 8 de enero de 2024, el Dr. Iván Aponte Aponte de la Corporación del Fondo del Seguro del Estado (CFSE) ordenó que se le proveyera al señor Herrera un

colchón y una silla ortopédicos para la condición médica que padece. Posteriormente, el 31 de enero de 2024, el señor Herrera presentó ante la DRA la *Solicitud de Remedios Administrativos* número B-233-24. Consecuentemente, el 15 de febrero de 2024, el Dr. Marcos Devarie, Director Médico del Complejo Correccional de Bayamón, emitió una *Respuesta del Área Concernida* a través de la DRA. Así, el 27 de febrero de 2024, la Evaluadora Maribel García Charriez emitió la *Respuesta al Miembro de la Población Correccional.*

Inconforme, el 5 de marzo de 2024, el señor Herrera presentó una *Solicitud de Reconsideración.* Así las cosas, el 18 de marzo de 2024, la DRA recibió y acogió la *Solicitud de Reconsideración* que presentó el señor Herrera. El 1 de mayo de 2024, la DRA emitió una *Resolución* mediante la cual determinó confirmar y modificar la *Respuesta del Área Concernida* emitida por el Dr. Marcos Devarie. En la misma, la DRA determinó, entre otras cosas, que el colchón y la silla ortopédicos debían ser provistos por la CFSE, pues era a través de estos que el señor Herrera recibía tratamiento.

Inconforme aun, el 4 de junio de 2024[1], el señor Herrera presentó ante este Tribunal una *Revisión Administrativa* y alegó la comisión de los siguientes errores:[2]

> **Erró los recurridos al concluir y determinar mediante Resolución falsas y viciadas alegaciones evasivas tanto de Physician Correctional como de la División de Remedios Administrativos, que no atendieron de una manera adecuada, ni objetiva los reclamos del recurrente, pasando por alto las evidencias médicas que obran en el expediente médico que afirman de manera inequivoca las condiciones crónicas de cuales sufre y padece el recurrente. Siendo las reclamaciones de los recurridos una viciada y llena de falsedades que resultan ser contrario a la verdad.**

> **Erró los recurridos al concluir y determinar mediante Resolución que no existía evidencia; que**

---

[1] El recurso de revisión judicial fue recibido en el DCR el 4 de junio de 2024, sin embargo fue enviado por correo postal el 20 de junio de 2024 y recibido en la Secretaría de este Tribunal el 24 de junio de 2024.

[2] Junto a su recurso de revisión administrativa, el señor Herrera presentó una *Solicitud y Declaración Para Que se Exima de Pago de Arancel Por Razón de Indigencia.*

**no había actos, incidentes que afecten personalmente al confinado (recurrente), en su bienestar físico y que Physician Correctional no tiene evidencia médica la cual le obligue a proveer este artículo (colchón ortopédico). Lo aquí expuesto por los recurridos se aparta de toda verdad y justicia y solo va dirigido a promover vicios de falsedad para no atender, ni cumplir con sus obligaciones en el descargo de sus funciones como manda la ley y los reglamentos internos tanto del Depto. de Corrección y Physician Correctional. Siendo todo lo anterior, contrario a derecho, irrazonable, arbitrario e ilegal, que afecta personalmente el bienestar físico del recurrente.**

Examinada la *Revisión Administrativa*, el 2 de julio de 2024, emitimos una *Resolución* mediante la cual le ordenamos al señor Herrera a que en el término de veinte (20) días acreditara la fecha en que le fue notificada la *Resolución* emitida el 1 de mayo de 2024. El 30 de julio de 2024, el señor Herrera presentó una *Moción Urgente en Cumplimiento Con Lo Ordenado Por el Tribunal.* Consecuentemente, el 8 de agosto de 2024, emitimos una *Resolución* mediante la cual le ordenamos al DCR a que en el término de diez (10) días presentara el documento que acredita la fecha de notificación de la *Resolución* del 1 de mayo de 2024. El 19 de agosto de 2024, el DCR, representado por la Oficina del Procurador General, presentó una *Moción en Cumplimiento de Resolución.*

Así, el 26 de agosto de 2024, emitimos una *Resolución* mediante la cual le ordenamos al DCR a que en el término de veinte (20) días presentara su posición al recurso. El 16 de septiembre de 2024, el DCR, representado por la Oficina del Procurador General, presentó un *Escrito en Cumplimiento de Orden.* Contando con el beneficio de la comparecencia de todas las partes, procedemos a resolver.

## II.

### A. Revisión judicial de las determinaciones administrativas

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, según enmendada, (3

LPRA sec. 9601 *et seq.*) (LPAU), se creó a los fines de uniformar los procedimientos administrativos ante las agencias. Consecuentemente, desde la aprobación del procedimiento provisto por la LPAU, los entes administrativos están precisados a conducir sus procesos de reglamentación, adjudicación y concesión de licencias y permisos de conformidad con los preceptos de este estatuto y el debido proceso de ley. *López Rivera v. Adm. de Corrección,* 174 DPR 247, 254-255 (2008).

La Sección 4.1 de la LPAU, dispone que las decisiones administrativas finales pueden ser revisadas por el Tribunal de Apelaciones. (3 LPRA sec. 9671). La finalidad de esta disposición es delimitar la discreción de los organismos administrativos para asegurar que estos ejerzan sus funciones conforme a la ley y de forma razonable. *Simpson y otros v. Consejo de Titulares y otros,* 2024 TSPR 64, 213 ___ (2024). Véase, además, *Capó Cruz v. Jta. de Planificación et al.,* 204 DPR 581, 590-592 (2020); *Empresas Ferrer, v. ARPe,* 172 DPR 254, 264 (2007). Es decir, la revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro de los márgenes de las facultades que le fueron delegadas por ley. *Capote Rivera y otros v. Voilí Voilá Corp. y otros,* 2024 TSPR 29, 213 DPR ___ (2024). A su vez, posibilita el poder constatar que los organismos administrativos "cumplan con los mandatos constitucionales que rigen el ejercicio de su función, especialmente con los requisitos del debido proceso de ley". Íd. Así, la revisión judicial constituye el recurso exclusivo para revisar los méritos de una decisión administrativa sea esta de naturaleza adjudicativa o de naturaleza informal. *Capote Rivera y otros v. Voilí Voilá Corp. y otros, supra; Depto. Educ. v. Sindicato Puertorriqueño,* 168 DPR 527 (2006).

Es norma reiterada que las decisiones de los organismos administrativos están revestidas de una presunción de regularidad

y corrección, *Transporte Sonell, LLC. v. Junta de Subastas,* 2024 TSPR 82, 214 DPR ___ (2024); *OCS v. CODEPOLA,* 202 DPR 842, 852-853 (2019). Esto debido a que, mediante esta norma se reconoce el peritaje del que gozan los organismos administrativos en aquellas materias que le han sido delegadas por ley. *OCS v. Universal,* 187 DPR 164, 178 (2012); *The Sembler Co. v. Mun. de Carolina,* 185 DPR 800, 821 (2012).

Nuestro máximo Foro ha establecido que, al ejercer la revisión judicial los tribunales no pueden descartar de forma absoluta la determinación de una agencia, sino que primero tienen que examinar la totalidad del expediente y determinar si la interpretación de la agencia representó un ejercicio razonable de su discreción administrativa, así fundamentado en la pericia particular de esta, en consideraciones de política pública o en la apreciación de la prueba. *Capote Rivera y otros v. Voilí Voilá Corp. y otros, supra; Otero v. Toyota,* 163 DPR 716 (2005).

Cónsono con lo anterior, la Sección 4.5 de la LPAU establece que los tribunales deben sostener las determinaciones de hechos de las agencias si están basadas en "evidencia sustancial que obra en el expediente administrativo". (3 LPRA sec. 9675). Como vemos, la norma anterior nunca ha pretendido ser absoluta. Por eso, el Tribunal Supremo ha resuelto con igual firmeza que los tribunales no pueden extender un sello de corrección, so pretexto de deferencia, a las determinaciones o interpretaciones administrativas irrazonables, ilegales, o simplemente, contrarias a derecho. *Super Asphalt v. AFI y otro* 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garage Isla Verde,* 202 DPR 117, 127 (2019).

Sin embargo, la citada Sección 4.5 de la LPAU, *supra,* dispone que "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal". Aun así, se sustituirá el criterio de la agencia cuando no se pueda hallar fundamento racional que

explique o justifique el dictamen administrativo. *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 36-37 (2018). Por ende, "los tribunales deben darle peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra". *Torres Rivera v. Policía de PR,* 196 DPR 606, 627 (2016). Lo anterior responde a la vasta experiencia y pericia que presumiblemente tienen estos organismos respecto a las facultades que se les han delegado. *Otero Rivera v. Bella Retail Group, Inc. y otros,* 2024 TSPR 70, 213 DPR ___ (2024). *González Segarra et al. v. CFSE,* 188 DPR 252, 276 (2013).

Al revisar las decisiones de las agencias, el criterio rector que debe guiar a los tribunales es la razonabilidad de la actuación, aunque ésta no tiene que ser la única o la más razonable. *Vargas Serrano v. Inst. Correccional,* 198 DPR 230, 237 (2017). Por lo tanto, al momento de examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. *Empresas Ferrer v. ARPe, supra,* pág. 264.

En esta tarea, los foros judiciales analizarán los aspectos siguientes: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial, y (3) si las conclusiones de derecho fueron correctas. *Otero Rivera v. Bella Retail Group, Inc. y otros, supra; Asoc. Fcias v. Caribe Specially et al. II,* 179 DPR 923, 940 (2010). Mientras que, las determinaciones de hecho se deben sostener si las mismas se basan en evidencia sustancial que surja de la totalidad del expediente administrativo, *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 36 (2018), las determinaciones de

derecho pueden ser revisadas en su totalidad. *Torres Rivera v. Policía de PR, supra,* pág. 627.

Si bien es cierto que la revisión judicial no equivale a la sustitución automática del criterio e interpretación del organismo administrativo, *Rebollo v.* Y *Motors,* 161 DPR 69, 77 (2004), los tribunales revisores descartarán el criterio de los entes administrativos cuando "no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo". *Rolón Martínez v. Supte. Policía, supra.* Si la interpretación y la aplicación del derecho no es correcta, el foro apelativo está obligado a intervenir. *JP, Plaza Santa Isabel v. Cordero Badillo,* 177 DPR 177, 187 (2009). "En esas circunstancias, [el foro apelativo] cederá la deferencia que merecen las agencias en las aplicaciones e interpretaciones de las leyes y los reglamentos que administra". *Super Asphalt Pavement, Corp. v. AFI y otros,* 206 DPR 803, 819 (2021). Véase, además, *Capote Rivera y otros v. Voilí Voilá Corp. y otros, supra; Rolón Martínez v. Supte. Policía, supra.*

**B. Solicitud de Remedios Administrativos**

El Artículo VI Sección 19 de la Constitución de Puerto Rico establece como política pública del Estado la reglamentación de las instituciones penales para que "sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social". Art. VI, Sec. 19, Const. ELA, LPRA, Tomo 1. A esos efectos, la Asamblea Legislativa aprobó el Plan de Reorganización #2 de 21 de noviembre de 2011, que establece las facultades del DCR.

Consecuentemente, el DCR promulgó el Reglamento Núm. 8583 de 4 de mayo de 2015, Reglamento para Atender las Solicitudes de Remedios Administrativas Radicadas por los Miembros de la Población Correccional (Reglamento Núm. 8583).

Específicamente, la Regla VI del Reglamento Núm. 8583 establece que,

1. [l]a División tendrá jurisdicción para atender toda Solicitud de Remedio radicada por los miembros de la población correccional en cualquier institución o facilidad correccional donde se encuentre extinguiendo sentencia y que este, relacionada directa o indirectamente con:

   a. Actos o incidentes que afecten personalmente al miembro de la población correccional en su bienestar físico, mental, en su seguridad personal o en su plan institucional.

   b. Cualquier incidente o reclamación comprendida bajo las disposiciones de este Reglamento.

   c. Cuando el superintendente impone la suspensión de privilegios sin celebración de vista alguna, conforme a la reglamentación vigente sobre la "Suspensión de Privilegios por Razones de Seguridad".

   d. Alegaciones de violencia sexual por parte de un miembro de la población correccional conforme "Prison Rape Elimination ACT" (PREA) (115.51 a, d, 115.52-b1, b2, b3).

2. La División no tendrá jurisdicción para atender las siguientes situaciones:

   a. Cuando no haya agotado el trámite administrativo concedido por otros reglamentos, excepto que la solicitud se refiera al incumplimiento del trámite correspondiente ante aquel organismo.

   b. Solicitudes de Remedios suscritas por un miembro de la población correccional en representación de otros miembros de la población correccional en la misma solicitud. Excepto cuando se refiera a reportar confidencias de cualquier tipo de violencia sexual en el entorno correccional.

   c. Cuando se trate de impugnar una orden o decisión de un organismo administrativo del Estado Libre Asociado de Puerto Rico o de un Tribunal de Justicia.

   d. Controversias relacionadas con las decisiones de la Junta de Libertad Bajo Palabra, excepto que la Solicitud de Remedios se refiera al incumplimiento del área concernida de rendir los informes o llevar a cabo unas acciones o incurrir en omisiones de obligaciones impuestas por el ordenamiento jurídico vigente.

   e. Cuando se impugne una decisión emitida por algún comité conforme a los reglamentos aprobados, según dispone la Ley de Procedimiento Administrativo Uniforme, excepto que la Solicitud de Remedio se refiera al incumplimiento del trámite correspondiente impuesto por el Tribunal.

f.  Cuando se trate de reclamaciones por accidentes del trabajo o de vehículos de motor, las cuales serán manejadas según la Ley de la Corporación del Fondo del Seguro del Estado y la Ley de Administración de Compensación por Accidentes de Automóviles, excepto que la solicitud se refiera al incumplimiento por parte del Departamento de Corrección y Rehabilitación de llevar a los miembros de la población correccional a recibir los servicios iniciales o de seguimiento.

g.  Cualquier otra situación que no cumpla con las disposiciones del presente Reglamento para la radicación de Solicitudes de Remedios.

Así pues, el procedimiento ante la DRA inicia con la presentación de una Solicitud de Remedios Administrativos por parte del miembro de la población correccional con interés en resolver una de las situaciones bajo la jurisdicción de la DRA. Regla XII del Reglamento Núm. 8583.

**III.**

En síntesis, el señor Herrera planteó que erró la parte recurrida al no atender de una manera adecuada ni objetiva sus reclamos, pasando por alto la evidencia que obra en el expediente médico, que afirman inequívocamente las condiciones crónicas que padece. Asimismo, sostuvo que erró la parte recurrida al concluir que no existía evidencia de actos o incidentes que lo afecten personalmente y que *Physician Correctional* no tiene obligación de proveer el colchón ortopédico.

Surge del derecho que antecede que, la DRA no tendrá jurisdicción para atender aquellas reclamaciones por accidentes del trabajo manejadas según la Ley de la CFSE, excepto que la solicitud se refiera al incumplimiento por parte del DCR de llevar a los miembros de la población correccional a recibir los servicios iniciales o de seguimiento.

En el caso ante *nos*, mientras el señor Herrera laboraba como guardia de seguridad para American Ranger sufrió una lesión. Consecuentemente, este acudió a la CFSE y recibió tratamiento

médico por unas lesiones en la espalda. Posteriormente, el señor Herrera fue ingresado en la institución correccional de Bayamón, por hechos que no están relacionados a la lesión que sufrió mientras laboraba y por la cual recibía tratamiento médico en la CFSE.

Así las cosas, el Dr. Iván Aponte Aponte de la CFSE ordenó que se le proveyera al señor Herrera un colchón y una silla ortopédicos para la condición médica que padece. Luego, el señor Herrera presentó ante la DRA una *Solicitud de Remedios Administrativos.* Oportunamente, el Dr. Marcos Devarie, Director Médico del Complejo Correccional de Bayamón, emitió una *Respuesta del Área Concernida* a través de la DRA. En esta, esbozó que: "[s]u caso es del Fondo del Seguro del Estado, no está directamente asociado a los servicios que ofrece el área médica. Le corresponde a la Administración de Corrección proveerle el *matress* que solicita. Le sugiero le notifique a su sociopenal su situación para que realice las gestiones necesarias". Así, la Evaluadora Maribel García Charriez emitió la *Respuesta al Miembro de la Población Correccional.*

Insatisfecho, el señor Herrera presentó una *Solicitud de Reconsideración.* Posteriormente, la parte recurrida emitió una *Resolución* mediante la cual determinó confirmar y modificar la *Respuesta del Área Concernida* emitida por el Dr. Marcos Devarie. En esta, la DRA determinó que el colchón y la silla ortopédicos debían ser provistos por la CFSE, pues era a través de estos que el señor Herrera recibía tratamiento.

Así, actuó correctamente la DRA al emitir su *Resolución* y determinar que el colchón y la silla ortopédicos debían ser provistos por la CFSE. Esto, pues es a través de la CFSE que el señor Herrera recibía tratamiento y según surge del Reglamento Núm. 8583, la parte recurrida no tiene jurisdicción para atender aquellas reclamaciones por accidentes del trabajo manejadas según la Ley de

la CFSE. Asimismo, la solicitud del señor Herrera tampoco se refiere al incumplimiento por parte del DCR de llevarlo a recibir los servicios iniciales o de seguimiento ante la CFSE. Por lo cual, no procede su reclamo ante el DCR, sino que debe realizarlo ante la CFSE.

Así pues, entendemos que la parte recurrida actuó razonablemente y dentro de los márgenes de las facultades que le fueron delegadas por ley. Véase, *Capote Rivera y otros v. Voilí Voilá Corp. y otros, supra*. Por los fundamentos expuestos, hubiese confirmado el dictamen.

Karilyn M. Díaz Rivera
Juez de Apelaciones

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| MÁXIMO HERRERA<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrida | KLRA202400335 | REVISIÓN ADMINISTRATIVA Procedente del Departamento de Corrección y Rehabilitación<br><br>Caso núm.:<br>B-233-24<br><br>Sobre:<br><br>Solicita Matres Ortopédico |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Candelaria Rosa, la jueza Álvarez Esnard y la jueza Díaz Rivera

**VOTO DISIDENTE DE LA JUEZ BRIGNONI MÁRTIR**

En San Juan, Puerto Rico, a 1 de octubre de 2024.

Muy respetuosamente disiento. Conforme a su reglamento, la División de Remedios Administrativos tiene jurisdicción primaria para atender quejas y reclamos de los confinados ante **actos o incidentes que afecten personalmente al miembro de la población correccional en su bienestar físico**, mental, en su seguridad personal o en su plan institucional.

Obra en el expediente administrativo evidencia de la condición y la recomendación por la cual la directora médica de la Oficina Regional de Bayamón de la Corporación del Fondo del Seguro del Estado recomendó que al confinado se le proporcionara un colchón ortopédico para minimizar el deterioro de su condición orgánica. Referido el asunto, el director del área médica de la institución Bayamón 501, Dr. Marcos Devarie, indicó que le corresponde a la Administración de Corrección el proveerle al confinado el matres solicitado. Finalmente, la respuesta en reconsideración recurrida, indica que el matres ortopédico debía ser suplido por el Fondo del Seguro del Estado. El confinado se encuentra bajo la custodia física de la

Administración de Corrección por lo que, lamentablemente, este es un claro ejemplo de cómo ambas agencias se pasan la "papa caliente" sin darle siquiera la oportunidad al confinado de atender su situación de salud mediante la alternativa de que su familia asumiera el costo de dicho matres ortopédico. Ante cuadro, es patente que la respuesta ofrecida al confinado, a mi entender, no está basada en la evidencia que obra en el expediente y es totalmente irrazonable en detrimento de la salud y bienestar físico del confinado.

Maritere Brignoni Mártir
Juez del Tribunal de Apelaciones